UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| JAMES F. GROEN, Derivatively on Behalf of DISCOVER FINANCIAL SERVICES,<br><br>        Plaintiff,<br><br>  vs.<br><br>DAVID W. NELMS, R. MARK GRAF, CARLOS MINETTI, HARIT TALWAR, LAWRENCE A. WEINBACH, JEFFREY S. ARONIN, MARY K. BUSH, GREGORY C. CASE, ROBERT M. DEVLIN, E. FOLLIN SMITH, MICHAEL H. MOSKOW, THOMAS G. MAHERAS, CYNTHIA A. GLASSMAN, RICHARD H. LENNY, ROY A. GUTHRIE, MARY MARGARET HASTINGS GEORGIADIS and PHILIP A. LASKAWY,<br><br>        Defendants,<br><br>  – and –<br><br>DISCOVER FINANCIAL SERVICES, a Delaware corporation,<br><br>        Nominal Party. | No.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>DEMAND FOR JURY TRIAL |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH
OF FIDUCIARY DUTY, CORPORATE WASTE AND UNJUST ENRICHMENT

## SUMMARY OF THE ACTION

1.     This is a shareholder derivative action on behalf of nominal defendant Discover

Financial Services ("Discover" or the "Company") against certain of its officers and directors for

breaches of fiduciary duties, corporate waste and unjust enrichment. Defendants' faithless acts have

exposed Discover to tens of millions of dollars in damages as well as severely injured Discover's

reputation, goodwill, and standing in the business community.

2.     Discover is one of the world's largest credit card issuers. Discover earned more than

$300 million in annual revenue from the sale of several optional fee-based financial products in each

of the last two years. Discover markets these products to its customers to provide financial security

against hardships such as job loss, sickness, identity theft, lost wallets, and low credit scores.

Discover, however, often enrolled consumers in these products based on highly deceptive and

misleading telemarketing calls.   The deceptive marketing practices include charging some

consumers for the products without the consumer's consent or knowledge of the cost or product they

were signing up for.

3.     Defendants condoned the deceptive marketing of these add-on products. Discover is

in a position to do this because, unlike a typical telemarketer, it has access to the person's personal

and financial information. Defendants' fiduciary duty of loyalty requires them to comply with

applicable law, rules, and regulations. Had the defendants abided by their duty of loyalty, these

improper marketing tactics would not have occurred and the unlawful activity would not have

continued for nearly a decade. As a result, defendants are liable to Discover for the damages.

4.     It is well established that causing a company to operate in violation of the law is a

breach of a fiduciary's duty of loyalty. Yet, in disregard for their fiduciary duties, that is exactly

what occurred here. Defendants' faithless acts have resulted in a class action settlement for $10.5

million. In addition, they have resulted in an investigation by the Federal Deposit Insurance

Corporation ("FDIC") and the Consumer Financial Protection Bureau ("CFPB") that the Company has reserved approximately $110 million to potentially resolve. Discover is also facing lawsuits by the Attorneys General of West Virginia, Missouri, and Hawaii stemming from its deceptive marketing practices. Defendants' breaches of loyalty have damaged Discover and its once valuable corporate franchise. Accordingly, plaintiff now brings this action to hold these disloyal fiduciaries accountable for the harm they caused Discover.

5.    Although Discover has been severely injured, defendants have not fared nearly so badly. Defendants pocketed tens of millions of dollars in salaries, fees, stock options, and other payments that were not justified in light of the violations of law at Discover that occurred during their watch. These payments wasted valuable corporate assets and unjustly enriched defendants to the detriment of Discover.

6.    Despite the severe injuries to Discover, the Discover Board of Directors (the "Board") has not commenced, and will not commence, suit against defendants for breach of loyalty, corporate waste and/or unjust enrichment, let alone vigorously prosecute such claims. By this action, plaintiff seeks to vindicate Discover's rights against its wayward fiduciaries.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction under 28 U.S.C. §1332 because plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. This action is not a collusive action designed to confer jurisdiction on the court of the United States that it would not otherwise have. This Court has supplemental jurisdiction under 28 U.S.C. §1367.

8.    This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an

individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper under 28 U.S.C. §1391(a) because Discover maintains offices within this District, a substantial portion of the transactions and wrongs complained of herein occurred in this District, and defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

**Plaintiff**

10.      Plaintiff James F. Groen is and has been a shareholder of Discover continuously since at least 2005. Plaintiff is a citizen of the state of Michigan.

**Nominal Defendant**

11.      Discover is a Delaware corporation with principal executive offices located at 2500 Lake Cook Road, Riverwoods, Illinois. Discover is one of the world's largest credit card issuers. In connection with its credit card business, Discover offers a variety of fee-based add-on products such as Payment Protection, Identity Theft Protection, Wallet Protection, Credit ScoreTracker, and others. Discover is a citizen of the states of Delaware and Illinois.

**Defendants**

12.      Defendant David W. Nelms ("Nelms") has been a director of Discover since 1998. He has also served as Discover's Chief Executive Officer ("CEO") since 2004. In breach of his duty of loyalty, Nelms caused or permitted Discover to engage in deceptive marketing practices which have exposed the Company to enormous damages and risks of loss. Nelms received more than $25 million in unjustified payments from Discover. Nelms is a citizen of the State of Illinois.

13.      Defendant R. Mark Graf ("Graf") has been Chief Financial Officer ("CFO"), Chief Accounting Officer, and an Executive Vice President of Discover since April 2011. Graf received

more than $2.4 million in unjustified payments from Discover. Graf is a citizen of the State of Illinois.

14.     Defendant Carlos Minetti ("Minetti") has been Executive Vice President, President – Consumer Banking and Operations of Discover since April 2010. He also served as Executive Vice President, Cardmember Services and Consumer Banking of Discover from September 2006 to April 2010, and as Executive Vice President, Cardmember Services and Risk Management from January 2003 to September 2006. Minetti pocketed more than $10 million in unjustified payments from Discover. Minetti is a citizen of the State of Illinois.

15.     Defendant Harit Talwar ("Talwar") has been Discover's Executive Vice President, President – US Cards of Discover since April 2010. Talwar also served as Executive Vice President, Card Programs and Chief Marketing Officer of Discover from December 2008 to April 2010, and as Executive Vice President, Discover Network from December 2003 to December 2008. Talwar pocketed more than $8 million in unjustified payments from Discover. Talwar is a citizen of the State of Illinois.

16.     Defendant Lawrence A. Weinbach ("Weinbach") has been a director of Discover since June 2007. On information and belief, Weinbach is a citizen of the State of Connecticut.

17.     Defendant Jeffrey S. Aronin ("Aronin") has been a director of Discover since June 2007. Aronin is a citizen of the State of Illinois.

18.     Defendant Mary K. Bush ("Bush") has been a director of Discover since June 2007. Defendant Bush is a member of the Audit and Risk Committee. Bush is a citizen of the State of Maryland.

19.     Defendant Gregory C. Case ("Case") has been a director of Discover since June 2007. Case is a citizen of the State of Illinois.

20.     Defendant Robert M. Devlin ("Devlin") has been a director of Discover since June 2007. On information and belief, Devlin is a citizen of the State of New York.

21.     Defendant E. Follin Smith ("Smith") has been a director of Discover since June 2007. She also has served on the Audit and Risk Committee of the Discover Board since June 2007. Follin is a citizen of the State of Pennsylvania.

22.     Defendant Michael H. Moskow ("Moskow") has been a director of Discover since September 2007. He also has served on the Audit and Risk Committee since September 2007. On information and belief, Moskow is a citizen of the State of Illinois.

23.     Defendant Thomas G. Maheras ("Maheras") has been a director of Discover since September 2008. He also has served on the Audit and Risk Committee of the Discover Board since September 2008. Maheras is a citizen of the State of New York.

24.     Defendant Cynthia A. Glassman ("Glassman") has served as a director of Discover since February 2009. She also has served on the Audit and Risk Committee of the Discover Board since February 2009. Glassman is a citizen of the State of Virginia.

25.     Defendant Richard H. Lenny ("Lenny") has been a director of Discover since February 2009. Lenny is a citizen of the State of Illinois.

26.     Defendant Roy A. Guthrie ("Guthrie") served as CFO, Chief Accounting Officer, and an Executive Vice President of Discover from 2005 to April 2011. Guthrie pocketed more than $10 million in unjustified payments from Discover. Guthrie is a citizen of the State of Texas.

27.     Defendant Mary Margaret Hastings Georgiadis ("Georgiadis") served as Executive Vice President, Chief Marketing Officer of Discover from 2004 to July 2008. As Discover's Chief Marketing Officer, Georgiadis was responsible for the Company's marketing practices, including its fee-based products. Georgiadis is a citizen of the State of Illinois.

28.     Defendant Philip A. Laskawy ("Laskawy") served as a director of Discover from June 2007 to September 2008. He also served on the Audit and Risk Committee of the Discover Board from June 2007 to September 2008. Laskawy is a citizen of the State of Connecticut.

29.     Defendants, and each of them, breached their duty of loyalty and good faith by allowing defendants to cause, or by themselves causing, the Company to violate applicable law, rules, and regulations. Defendants, and each of them, also failed to prevent the other defendants from taking such illegal actions. In addition, as a result of defendants' illegal actions and course of conduct, Discover has been exposed to tens of millions of dollars in damages and is the subject of investigations by the FDIC and CFPB.

## THE FIDUCIARY DUTIES OF DISCOVER'S DIRECTORS AND OFFICERS

30.     By reason of their positions as officers, directors, and/or fiduciaries of Discover and because of their ability to control the business and corporate affairs of Discover, defendants owe Discover and its shareholders a fiduciary duty of loyalty, and are required to use their utmost ability to control and manage Discover in an honest and lawful manner. Defendants are required to act in furtherance of the best interests of Discover and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

31.     Each officer and director of the Company owes to Discover and its shareholders the fiduciary duty to exercise good faith in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, performance, management, projections, and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

32.     In addition to these duties, under the Company's Audit and Risk Charter, the defendants on the Audit and Risk Committee (Bush, Glassman, Laskawy, Maheras, Moskow and Smith) owed specific duties to Discover to monitor the Company's risk management. The Audit and Risk Committee's Charter provides, in relevant part, that the Audit and Risk Committee is responsible for "compliance with legal and regulatory requirements."

33.     Under the Company's Code of Ethics and Business Conduct ("Code"), each member of the Board and each Discover employee is required to "[f]ollow both the letter and the spirit of the law." The Code tells Discover directors, officers, and employees that it is their "responsibility to understand the laws applicable to your responsibilities and to comply with both the letter *and* the spirit of these laws." The Code emphasizes:

**Act in the best interests of customers, the company, and the public**

The Company seeks to outperform its competition fairly and honestly through superior performance. Every director, officer, and employee must protect the Company's reputation by dealing fairly with customers, the public, competitors, suppliers, and one another. No one should take unfair advantage of anyone through manipulation, concealment, abuse of privileged information, or misrepresentation of facts.

\*          \*          \*

**Be honest and fair in your communications with the public**

The Company has a responsibility under the law to provide accurate and complete disclosure to the investing public, and to the extent that you are involved in the preparation of materials for dissemination to the public, you must ensure that the information is accurate and complete in all material respects. In particular, the Company's senior financial officers, executive officers and directors must endeavor to promote accurate, complete, fair, timely and understandable disclosure in the Company's public communications, including documents that the Company files with or submits to the United States Securities and Exchange Commission and other regulators.

Officers and employees must consult their business unit or department for standards that apply to oral and written communications with the public, as well as the circumstances under which communications must be reviewed by supervisors and others. If you become aware of a materially inaccurate or misleading statement in a

public communication, you must promptly report it in accordance with the procedures outlined in the *Reporting Misconduct* section of this Code.

34.     Defendants, because of their positions of control and authority as officers and/or directors of Discover, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

35.     Because of their advisory, executive, managerial, and directorial positions with Discover, each of defendants had access to adverse, non-public information about the Company's risk exposure and violation of applicable law, rules and regulations regarding the deceptive marketing practices.

36.     At all times relevant hereto, each of the defendants was the agent of each of the other defendants, and was at all times acting within the course and scope of such agency.

**Breaches of Duties**

37.     Each of the defendants, by virtue of his or her position as an officer and/or director, owe Discover and its shareholders a fiduciary duty of loyalty to exercise good faith in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of Discover, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the defendants who were also officers and/or directors of the Company has been ratified by the remaining defendants who collectively comprised all of Discover's Board.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

38.     In committing the wrongful acts complained of herein, defendants pursued or joined in the pursuit of a common course of conduct, and acted in concerts with one another in furtherance of a common plan or design. In addition to the wrongful conduct complained of herein giving rises

- 8 -

to primary liability, defendants further aided and abetted and/or assisted each other in breach of their fiduciary duty of loyalty.

39.     Each of the defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such action to substantially assist the commission of the wrongdoing complained of herein, each defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## SUBSTANTIVE ALLEGATIONS

**Defendants Fostered a Business Strategy Designed to Increase Discover's Fee-Based Financial Products to Its Customers at the Expense of the Company's Compliance with Federal and State Law**

40.     Discover is one of the nation's largest credit card issuers. Discover earns nearly $300 million in annual revenue from the sale of several optional fee-based financial products. Discover markets these add-on products as ways for consumers to protect themselves from fraudulent or unauthorized charges or to enhance their financial security against such hazards or hardships like job loss or sickness, identity theft, lost wallets, or low credit scores. Discover, however, often enrolls consumers in these products based on highly deceptive and misleading telemarketing calls, even charging some consumers for the products without the consumer's consent or understanding that their credit card will be charged for these products. Discover is in a position to do this because, unlike a typical telemarketer, it has access to the person's personal and financial information.

41.     Discover sells at least four optional financial products for a monthly fee. These products are called the Payment Protection Plan, Identity Theft Protection, Wallet Protection, and Credit ScoreTracker (the "Plans"). Discover presents all four optional fee-based Plans as a way for consumers to increase their financial security, whether by protecting the customer from fraud or unauthorized charges, or insuring them against a loss of income. Discover charges $0.89 for every

$100 of outstanding balance on the cardholder's account each month for Payment Protection; $12.99 per month for Identity Theft Protection; $2.99 per month for Wallet Protection; and $7.99 per month for Credit ScoreTracker. These fees are a significant revenue generator for the Company, generating $295 million, $412.5 million, and $428.2 million in 2009, 2010, and 2011, respectively. Although profitable, Discover's marketing of the Plans violated the consumer protection laws and exposed the Company to damages and loss.

**Payment Protection Plan – Deceptive Marketing Claims**

42.    The Payment Protection Plan purports to temporarily suspend the cardholder's obligation to make regular monthly payments on their Discover card in the event of certain qualifying events. The qualifying events include involuntary unemployment, disability, hospitalization, or natural disasters. If a cardholder maintains an outstanding balance on their credit card, experiences a qualifying event, and otherwise meets the requirements of the plan's terms and conditions, they may qualify for a temporary suspension of their monthly payment obligations.

43.    The Payment Protection Plan is similar to credit insurance in the sense that it purports to protect the borrower from defaulting if an unanticipated event disrupts the borrower's source of income. Unlike credit insurance, however, the debt suspension portion of the Payment Protection Plan does not actually make monthly payments as they come due each month. Instead, the Payment Protection Plan only suspends the borrower's obligation to make monthly payments temporarily. Critics point out that debt suspension agreements are sometimes marketed to elderly consumers, for whom material benefits of the plan may be of little or no value.

44.    To increase profits, Discover manipulated the claims payment process in its favor by limiting the chances of having to honor or pay Payment Protection Plan claims. While on defendants' watch, Discover relied upon a deceptive practice known as "post claims underwriting" to accomplish this strategy. This is the practice of asking few or no questions of the cardholder at

the time of sale to determine if the customer is likely to qualify for benefits should the need arise. When the customer attempts to use the "benefits" of the Payment Protection Plan, Discover denies the benefits for reasons that were not disclosed at the time of sale. For example, numerous retired senior citizens are charged for the Payment Protection Plan even though they are excluded from ever receiving unemployment benefits.

45.     As a result of Discover's deceptive and unfair marketing schemes and claims practices, cardholders purchased a product that is virtually worthless to them, and are charged excessively for the product even if one assumes that product has some value to the cardholder.

**Payment Protection Plan – Refusal to Take No for An Answer**

46.     Discover enrolls far more of its cardholders through telemarketing than through the mail or online, the latter two of which require an affirmative act by the consumer to enroll, such as initialing their monthly statement in the designated place, authorizing enrollment, and mailing it back to Discover.

47.     Most of Discover's cardholders are enrolled in the Plans through Discover's aggressive and deceptive telemarketing efforts and card activation calls. Some of these calls are made internally by Discover, and others are made by telemarketing firms that Discover hires.

48.     In addition to Discover's financial motive to enroll as many of its customers as possible into its highly lucrative fee-based products, individual Discover telemarketers are incentivized to enroll as many cardholders as possible, either because their compensation is commission-based or because their performance is otherwise compensated on the number of cardholders they enroll.

49.     Discover's telemarketers employ numerous deceptive tactics to elicit an affirmative response from the cardholder without the cardholder actually understanding that they are supposedly

agreeing to purchase an optional product for a monthly fee, thereby tricking some consumers into unknowingly signing up for the plans.

50.     Sometimes the telemarketer's deceptive tactics fail and the cardholder tells the telemarketer he or she is not interested. Undeterred, Discover's telemarketers sometimes assure these cardholders that Discover is simply going to send the cardholder a "packet of information."

**Identity Theft Protection, Credit ScoreTracker and
Wallet Protection - Deceptive Marketing Claims**

51.     Discover also deceptively enrolls its customers in the Credit ScoreTracker, Identity Theft Protection, and Wallet Protection products.   With Discover's Credit ScoreTracker, the cardholder is given a copy of their Experian credit report.   In addition, enrollees are given access to tools that allow them to track their credit score on a daily basis and to receive e-mail alerts if there are changes to their credit score.   A main selling point Discover uses to market this plan is the Experian credit report consumers receive.   Discover charges enrollees an additional $19.99 (in addition to the monthly fee) if they want credit reports from the other major credit reporting agencies.   Experian and the two other major credit reporting agencies, however, are required by federal law to provide consumers one free credit report each year.   Discover charges the cardholders' accounts $7.99 per month for this product.

52.     Discover's Identity Theft Protection plan purports to monitor the enrollee's credit score for indicia of identity theft and will alert the enrollee if something suspicious happens to his/her credit score.   Discover enrolls its customers into this plan without their knowledge or consent and fails to withdraw customers from the plan upon request in order to continue billing them for the product.   Discover charges the cardholders' accounts $12.99 per month for this product.

53.     Under Discover's Wallet Protection plan, if the enrollee's wallet is lost or stolen, Discover will contact the issuers of the enrollee's credit cards to cancel the cards.   In addition, Discover represents that it will monitor a customer's credit for 90 days after their wallet is lost or

stolen and wire the customer up to $1,000 in emergency cash. Discover enrolls cardholders in this plan without their meaningful, knowing authorization and charges the cardholders' credit cards $2.99 per month.

**Federal and State Laws Prohibit Discover's**
**Manipulative Marketing Practices**

54.     The FDIC and the CFPB have been reviewing the Company's marketing practices with respect to its fee-based products, including its Payment Protection Plan. The FDIC and the CFPB have notified the Company that they plan to take a joint enforcement action against the Company. The agencies have served the Company with subpoenas and a civil investigative demand for documents and testimony related to their ongoing investigation. The enforcement action could include civil monetary penalties, significant restitution, and additional business practice changes.

55.     The CFPB is a new agency created under the Dodd-Frank Wall Street Reform Act. The CFPB holds primary responsibility for regulating consumer protection in the United States. There is no precedent established for enforcement matters by the CFPB. Due to the breadth of its power, however, the CFPB is expected to wield significant power to punish companies that harm consumers. Indeed, Capital One Financial Corporation paid more than $200 million to settle charges of deceptive marketing of credit card add-on products such as payment protection and credit monitoring services – the same issues that the CFPB is investigating here.

56.     To this point, defendants have assessed Discover's exposure at $110 million. As the Company's Form 10-Q filed on June 26, 2012 states, the Company "believes the estimate of the aggregate range of reasonably possible losses . . . in excess of the amounts that the Company has accrued for legal and regulatory proceedings is up to $110 million."

57.     In addition to the FDIC and CFPB actions, there are eight class actions pending in relation to the sale of the Company's deceptive marketing practices. The cases were filed on: July 8, 2010 in the Northern District of California (*Walker, et al. v. DFS, Inc. and Discover Bank*); July 16,

- 13 -

2010 in the Central District of California (*Conroy v. Discover Financial Services and Discover Bank*); October 22, 2010 in the District of South Carolina (*Alexander v. Discover Financial Services, Inc., DFS Services LLC, Discover Bank, and Morgan Stanley*); November 5, 2010 in the Northern District of Illinois (*Callahan v. Discover Financial Services, Inc. and Discover Bank*); December 17, 2010 in the Western District of Tennessee (*Sack v. DFS Services LLC, Discover Financial Services, Inc., and Discover Bank*); January 14, 2011 in the Eastern District of Pennsylvania *(Boyce v. DFS Services LLC, Discover Financial Services Inc. and Discover Bank*); February 15, 2011 in the Southern District of Florida (*Triplett v. Discover Financial Services, Inc., DFS Financial Services LLC, Discover Bank and Morgan Stanley*); and March 7, 2011 in the Eastern District of Pennsylvania (*Carter v. Discover Financial Services, Inc., DFS Financial Services LLC, Discover Bank, Morgan Stanley, et al.*). All of the cases have been transferred to the U.S. District Court for the Northern District of Illinois pursuant to a multi-district litigation order issued by the Joint Panel on Multidistrict Litigation in February 2011.

58. These class actions challenge the Company's marketing practices with respect to its Payment Protection Plan to cardmembers under various state laws and the Truth in Lending Act. The plaintiffs in these actions seek monetary remedies, including unspecified damages and restitution, attorneys' fees and costs, and various forms of injunctive relief, including an order rescinding the Payment Protection Plan enrollments of all class members. In June 2011, the Company and class counsel entered into a preliminary global settlement of all of the pending class actions. On November 9, 2011, the court granted preliminary approval of the settlement. The settlement encompasses Discover's sale and administration of the Plans. The settlement received final approval from the court on May 10, 2012 and resulted in a $10.5 million settlement.

59. On August 16, 2011, the Attorney General of West Virginia filed a lawsuit against the Company in the Circuit Court of Mason County, West Virginia (*West Virginia v. Discover Financial*

*Services, Inc., Discover Bank, DFS Services LLC, et al.*). The lawsuit asserts various claims related to the Company's marketing and administration of various fee-based products under West Virginia law. The relief sought in the lawsuit includes an injunction prohibiting the Company from engaging in the alleged violations, restitution, and disgorgement of monies received from the complained of practices, civil penalties, and costs.

60.     On August 26, 2011, the Attorney General of Missouri issued a request for information to the Company in connection with an investigation to determine whether the Company has engaged in conduct that violates Missouri law in the marketing of its Payment Protection Plan to its credit card customers.

61.     On April 12, 2012, the Attorney General of Hawaii filed a lawsuit against the Company in the Circuit Court of the First Circuit, Hawaii (*Hawaii v. Discover Financial Services, Inc., Discover Bank, DFS Services LLC, et al.*). The lawsuit asserts various claims related to the Company's marketing and administration of various fee-based products under Hawaii law. The relief sought in the lawsuit includes an injunction prohibiting named parties from engaging in the alleged violations, restitution, and disgorgement of monies received from the complained of practices, civil penalties, and costs.

## DAMAGES TO DISCOVER

62.     As a direct and proximate result of defendants' actions, Discover has expended, and will continue to expend, significant sums of money. Such expenditures include, but are not limited to:

(a)     costs incurred from defending and paying the settlement in the consumer class actions;

(b)     costs incurred from defending and paying potential settlements in the lawsuits filed by the state Attorneys General of West Virginia, Missouri, and Hawaii;

(c)     costs incurred from defending and paying the settlement in the FDIC and

CFPB actions; and

(d)     costs incurred from compensation and benefits paid to the defendants who

have breached their duties to Discover.

63.     Moreover, these actions have irreparably damaged Discover's corporate image and

goodwill. For at least the foreseeable future, Discover will suffer from what is known as the "liar's

discount," a term applied to the stocks of companies who have been implicated in improper behavior

and have misled the investing public, such that Discover's ability to raise equity capital or debt on

favorable terms in the future is now impaired.

## DERIVATIVE ALLEGATIONS

64.     Plaintiff brings this action derivatively in the right and for the benefit of Discover to

redress injuries suffered, and to be suffered, by Discover as a result of breaches of fiduciary duty,

corporate waste and unjust enrichment, as well as the aiding and abetting thereof, by defendants.

65.     Plaintiff will adequately and fairly represent the interests of Discover in enforcing and

prosecuting its rights.

66.     The members of the Discover Board are defendants Nelms, Weinbach, Aronin, Bush,

Case, Devlin, Smith, Moskow, Maheras, Glassman, and Lenny. Plaintiff has not made any demand

on the Discover Board to institute this action because such a demand would be a futile and useless

act, and, therefore, excused.

**Demand Is Excused Because the Board's Conduct**
**Is Not a Valid Exercise of Business Judgment**

67.     The wrongs alleged herein constitute violations of the Company's internal policies

and charters and cannot be considered a valid exercise of business judgment. Defendants' wrongful

conduct was continuous and occurred both before and throughout the relevant time period and

resulted in ongoing and continuous harm to the Company.

68. Defendants participated in and/or failed to adequately address, correct, and/or disclose such conduct. Defendants Nelms, Weinbach, Aronin, Bush, Case, Devlin, Smith, Moskow, Maheras, Glassman, and Lenny's challenged misconduct at the heart of this case constitutes an ongoing and continuous scheme to break the law that took place for almost a decade. As the ultimate decision-making body of the Company, the Discover Board adopted, implemented, and condoned a business strategy based on deliberate and widespread illegal activities. The Company generates substantial revenue from its fee-based products like the Plans. In particular, the Company generated $295 million, $412.5 million, and $428.2 million in 2009, 2010, and 2011, respectively. Because the Plans are a significant source of revenue, the members of the Board have a duty to understand how the Company's revenue is created and that it complies with applicable law. The Discover Board failed to do this and, as such, their conduct was not a valid exercise of business judgment.

**Demand Is Excused Because Defendants Nelms, Weinbach,
Aronin, Bush, Case, Devlin, Smith, Moskow, Maheras, Glassman
and Lenny Face a Substantial Likelihood of Liability for Their Misconduct**

69. As alleged above, defendants Nelms, Weinbach, Aronin, Bush, Case, Devlin, Smith, Moskow, Maheras, Glassman, and Lenny breached their fiduciary duty of loyalty by violating the Company's internal policies and federal and state laws, rules, and regulations. Nelms, Weinbach, Aronin, Bush, Case, Devlin, Smith, Moskow, Maheras, Glassman, and Lenny all face a substantial likelihood of liability for failing to act on the information supplied to them from the Company's system of internal controls, which was purportedly designed to allow Discover to comply with its legal obligations under federal and state law. Each of these defendants served on Discover's Board for at least part of the relevant time period when the Board chose to allow Discover employees to engage in illegal marketing and recklessly disregarded the information provided to them, via Discover's internal controls, that the Company was receiving substantial revenues from illegal

marketing to its own customers. Accordingly, Nelms, Weinbach, Aronin, Bush, Case, Devlin, Smith, Moskow, Maheras, Glassman, and Lenny all face a substantial likelihood of liability and cannot impartially consider a demand.

70.     In addition, defendants Bush, Glassman, Maheras, Moskow, and Smith (the "Audit Committee Defendants"), as members of the Audit and Risk Committee, reviewed and approved the Company's risk exposure and compliance with applicable laws, rules, and regulations. The Audit and Risk Committee's charter provides that it is responsible for compliance with accounting, legal, and regulatory requirements. Thus, the Audit Committee Defendants were responsible for knowingly or recklessly allowing the improper marketing practices related to the Plans. Despite their knowledge or reckless disregard, the Audit Committee Defendants caused these improper activities. Accordingly, the Audit Committee Defendants breached their fiduciary duty of loyalty and good faith because they participated in the wrongdoing described herein. Thus, the Audit Committee Defendants face a substantial likelihood of liability for their breach of fiduciary duties so any demand upon them is futile.

**Defendant Nelms Is Not Independent**

71.     The principal professional occupation of defendant Nelms is his employment with Discover, pursuant to which he has received and continues to receive substantial monetary compensation and other benefits as alleged above. Accordingly, Nelms lacks independence from Weinbach, Aronin, Bush, Case, Devlin, Smith, Moskow, Maheras, Glassman, and Lenny due to his interest in maintaining his executive positions at Discover. This lack of independence renders Nelms incapable of impartially considering a demand to commence and vigorously prosecute this action. Discover paid Nelms millions in unjustified payments. Accordingly, Nelms is incapable of impartially considering a demand to commence and vigorously prosecute this action because he has

an interest in maintaining his principal occupation and the substantial compensation he receives in connection with that occupation. Demand is futile as to Nelms.

72. Plaintiff has not made any demand on shareholders of Discover to institute this action since such demand would be a futile and useless act for the following reasons:

(a) Discover is a publicly traded company with approximately 514 million shares outstanding, and thousands of shareholders;

(b) Making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c) Making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## COUNT I

### Against Defendants for Breach of Fiduciary Duty

73. Plaintiff incorporates ¶¶1-72.

74. Defendants owed and owe Discover a fiduciary duty of loyalty. By reason of their fiduciary capacities, defendants owed and owe Discover the highest obligation of good faith and fair dealing.

75. Defendants, and each of them, violated and breached their fiduciary duty of loyalty. More specifically, defendants violated their duty of loyalty by creating a culture of lawlessness within Discover, and/or consciously failing to prevent to Company from engaging in the unlawful acts complained of herein.

76. In the face of a known legal duty to comply with federal and state laws, rules, and regulations, defendants consciously failed to prevent the Company from engaging in the unlawful acts complained of herein.

77.     Defendants, as directors of the Company, owed Discover the highest duty of loyalty. Defendants breached their duty of loyalty by recklessly disregarding the illegal activity of such substantial magnitude and duration. In the face of a known duty to comply with federal and state laws, rules, and regulations, defendants consciously failed to prevent the Company from engaging in the unlawful acts complained of herein.

78.     Defendants breached their fiduciary duty of loyalty by failing to properly maintain adequate risk controls during their tenure on the Audit and Risk Committee. Defendants completely and utterly failed in their duty of oversight as required by the Audit and Risk Committee Charter in effect at the time.

79.     As a direct and proximate result of defendants' breach of loyalty, Discover has been damaged. As a result of their misconduct, defendants are liable to the Company for damages.

80.     Plaintiff, on behalf of Discover, has no adequate remedy at law.

## COUNT II

### Against Defendants for Corporate Waste

81.     Plaintiff incorporates ¶¶1-80.

82.     As a result of the deceptive marketing practices, and by failing to conduct proper supervision, defendants have caused Discover to waste its assets by paying improper compensation and bonuses to certain of its executive officers and directors that breached their fiduciary duty.

83.     As a result of the waste of corporate assets, defendants are liable to the Company.

84.     Plaintiff, on behalf of Discover, has no adequate remedy at law.

## COUNT III

### Against Defendants for Unjust Enrichment

85.     Plaintiff incorporates ¶¶1-84.

86.     By their wrongful acts and omissions, defendants were unjustly enriched at the expense of and to the detriment of Discover. Defendants were unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to Discover.

87.     Plaintiff, as a shareholder and representative of Discover, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

88.     Plaintiff, on behalf of Discover, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of Discover, demands judgment as follows:

A.     Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breach of loyalty, corporate waste and unjust enrichment;

B.     Directing Discover to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Discover and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for a shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote the following Corporate Governance Policies:

(i)     a provision that requires the Audit and Risk Committee to review the Company's marketing practices to ensure compliance with applicable laws, rules, and regulations;

(ii)     a provision that creates an officer level position that is tasked with communicating, complying, and implementing the FDIC's and CFPB's laws, rules, and regulations;

(iii)     a proposal to strengthen the Board's supervision of operations and develop

and implement procedures for greater shareholder input into the policies and guidelines of the Board;

and

(iv)     a provision to permit the shareholders of Discover to nominate at least three

candidates for election to the Board;

C.     Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state

statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust

on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to

assure that plaintiff on behalf of Discover has an effective remedy;

D.     Awarding to Discover restitution from defendants, and each of them, and ordering

disgorgement of all profits, benefits, and other compensation obtained by the defendants,

E.     Awarding to plaintiff the costs and disbursements of the action, including reasonable

attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  August 14, 2012                  ROBBINS GELLER RUDMAN
                                                    & DOWD LLP
                                                JAMES E. BARZ (IL Bar # 6255605)

*s/James E. Barz*
_____
JAMES E. BARZ

200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)

- 22 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
BENNY C. GOODMAN III
ERIK W. LUEDEKE
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ROBBINS UMEDA LLP
BRIAN J. ROBBINS
GREG DELGAZIO
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: 619/525-3990
619/525-3991 (fax)

LAW OFFICE OF ALFRED G.
  YATES, JR., P.C.
ALFRED G. YATES, JR.
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219
Telephone: 412/391-5164
412/471-1033 (fax)

Attorneys for Plaintiff