# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE DISCOVER FINANCIAL SERVICES DERIVATIVE LITIGATION | ) ) ) ) ) | No. 12 C 6436<br><br>Judge Jorge L. Alonso |

## MEMORANDUM OPINION AND ORDER

Before the Court are plaintiffs' motions for reconsideration and leave to amend, which are denied for the following reasons.

## BACKGROUND

The Court previously granted defendants' motion to dismiss the amended verified consolidated shareholder derivative complaint for failure to adequately plead demand futility. (ECF No. 108, Mem. Op. & Order.) Plaintiffs contend that the Court erred by failing to consider their allegations in their totality and making inferences against them. (ECF No. 109, Pls.' Mot. for Recons.) Plaintiffs also seek leave to file a second amended complaint. (ECF No. 112, Pls.' Mem. Supp. Request for Leave to Amend.) The reader's familiarity with the case is presumed; the Court recounts only those aspects of the case necessary for this ruling.

## DISCUSSION

**A.      Motion for Reconsideration**

"Motions for reconsideration serve a limited function; to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.), *amended on other grounds on denial of reh'g sub nom. Rosenthal & Co. v. Rothwell Cotton Co.*, 835 F.2d 710 (7th Cir. 1987); *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008). The Court held in its previous opinion that "[u]nder Delaware's

demand-futility law, plaintiffs' allegations, even considered collectively, are insufficient to establish demand futility." (Mem. Op. & Order at 23.) The Court also noted that plaintiffs are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged. (*Id.* at 18.) Plaintiffs contend that even though the Court explicitly stated that it was considering their allegations as a whole, it erred by not actually doing so and by making inferences against plaintiffs, therefore placing an "unreasonably high burden" on them. (Pls.' Mot. for Reconsideration at 1, 5.) According to plaintiffs, the "totality of the allegations are stronger than any of them scrutinized in isolation and are collectively sufficient to infer that the Board had notice of the wrongdoing and chose not to bring it to a prompt halt." (*Id.* at 4.) Plaintiffs revisit and expand upon the arguments they previously presented in response to defendants' motion to dismiss. They also take issue with the Court's distinguishing the decisions that they relied upon.

Although motions to reconsider "do not provide an opportunity to litigate previously rejected arguments," *Thomas v. Johnston*, 215 F.3d 1330 (7th Cir. 2000), which is what plaintiffs' motion seeks to do, the Court has nevertheless reviewed its previous order and reexamined in detail the allegations of the amended complaint. As the Court previously stated, it did consider plaintiffs' allegations in their totality, and it is unpersuaded that it made inferences against plaintiffs (as opposed to rejecting unreasonable inferences), disregarded or misapplied controlling precedent, or otherwise manifestly erred in holding that the allegations did not allow a reasonable inference that the Board of Directors ("Board") of Discover Financial Services ("Discover") knew that Discover was violating the law and did nothing about it, as is required for plaintiffs to make the required threshold showing of demand futility. Therefore, the motion for reconsideration is denied.

**B.     Motion for Leave to Amend**

"'The decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court.'" *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 875 (7th Cir. 2011) (brackets omitted) (quoting *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002)). "[A]s a general rule, a court 'should freely give leave [to amend] when justice so requires.'" *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (quoting Fed. R. Civ. P. 15(a)(2)). However, district courts "have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Id.*

Plaintiffs have filed a memorandum in support of their request for leave to file a second amended complaint to "correct the pleading errors that plagued their first complaint and caused it to be dismissed."[1] (Pls.' Mem. at 9.) They do not attach to the memorandum a proposed second amended complaint but state that their memorandum "detail[s] precisely what they intend to include in the amended complaint." (ECF No. 126, Pls.' Reply at 1.)

There are three categories of proposed supplemental allegations. The first, according to plaintiffs, are "allegations that show the wrongdoing continued beyond August 2011" and into 2012, "which makes the inference that defendants condoned the wrongdoing by failing to bring it to a prompt halt more plausible." (Pls.' Mem. at 2-3.) This is an effort to expand the time period of the alleged wrongdoing and respond to the Court's holding that plaintiffs had failed to allege particularized facts that allow a reasonable inference that the Board intentionally permitted or consciously disregarded any illegal marketing of the add-on products during that

---

[1]This wording is curious, given that plaintiffs had filed their motion for reconsideration of the dismissal just four days earlier.

time period. Plaintiffs first refer the Court to to the September 2012 Joint Consent Order (a document that the Court previously reviewed and considered)—specifically, its requirement that Discover take affirmative corrective actions within sixty days of the Order's effective date. (Pls.' Mem. at 2-3 (citing ECF No. 69-5 at 6-7).) Plaintiffs also cite a press release issued by the FDIC and CFPB that announced the Joint Consent Order and stated that Discover had agreed to "[s]top deceptive marketing," as well as complaints in litigation filed against Discover in 2012 and 2013 by the states of New Mexico, Hawaii, and Mississippi that used present-tense phrasing ("defendants are using and have used") to describe Discover's alleged deceptive practices. (*Id.* at 3-4 & Ex. A). Plaintiffs contend that it is therefore "clear" that the wrongdoing was occurring well past August 2011 and into 2012. Plaintiffs read too much into the general language used in these documents. The agencies' statements were directives, not representations about what Discover was doing at that specific time. The states' use of the present tense strikes the Court as mere legal convention, but in any event, the allegations do not materially differ from those in the actions by various attorneys general that the Court addressed in its previous opinion, and they do not permit a reasonable inference that the Board knew about ongoing wrongdoing and condoned it.

Plaintiffs also indicate that in a second amended complaint, they would include details about Discover's revenues from the add-on products. (Pls.' Mem. at 4-6.) As the Court noted in its previous ruling, the amended complaint alleged that those products "generated $214 million, $249 million, $295 million, $412.5 million, and $428.2 million [in revenue] in 2007, 2008, 2009, 2010, and 2011, respectively," and that because the products are a "significant source of revenue, the members of the Board have a duty to understand how [Discover's] revenue is created and that it complies with applicable law." (Mem. Op. & Order at 14-15 (citing ECF No. 63, Am.

4

Compl. ¶¶ 61, 120).) Plaintiffs propose to add allegations of the quarterly breakdowns of these revenues, plus the steady quarterly revenues for the products for the first three quarters of 2012, which were very similar to those of 2011. (Pls.' Mem. at 4-5.) Plaintiffs submit that these proposed allegations, combined with the directors' duty to review quarterly and annual financial statements, permit an inference that the directors were aware of ongoing violations in 2011 and 2012 and failed to promptly bring them to a halt. (*Id.* at 6.) In support of their argument, plaintiffs cite *Westmoreland County Employee Retirement System v. Parkinson*, 727 F.3d 719, 729 (7th Cir. 2013). (*Id.*)

Except for the allegations about 2012 revenues, plaintiffs' allegations are not new; the quarterly breakdowns do not add substance to what was already alleged and rejected as a basis for inferring bad faith. As for 2012, the Court agrees with defendants that the steady revenues from the products in 2012 do not allow a reasonable inference even that the misconduct continued after the relevant period identified in the Joint Consent Order, let alone that the directors were aware of ongoing misconduct and stood by idly.[2] As the Court previously explained, *Westmoreland* does not assist plaintiffs because there, the complaint alleged "particularized facts," including meeting dates and minutes, "indicating that the directors were intimately involved in overseeing" the corporation's efforts in remediating problems with its manufacturing of a drug-infusion pump and achieving compliance with a consent decree and health and safety laws. *See* 727 F.3d at 727-28. Plaintiffs have offered no such allegations of Board members' involvement.

---

[2]For the same reason, the Court rejects plaintiffs' contention that the consistency of the quarterly revenues was a "red flag." (Pls.' Mem. at 8.)

The final set of proposed further allegations are what plaintiffs deem "additional red flags." (Pls.' Mem. at 6.) They fall into four general categories: 1) conference calls held by Discover executives during the relevant period and statements they made during those calls; 2) an additional class action suit, filed in April 2010, and an additional suit by a state, filed in 2013, regarding Discover's marketing practices, and Discover's offer of full refunds in 2010 and settlement of those suits beginning in 2011; 3) news articles and television stories about the lawsuits against Discover; and 4) Discover's disclosures in July and September 2011 about the likelihood of an enforcement action by the FDIC. (*Id.* at 6-9.)[3]

The Court agrees with defendants that these are largely the same kinds of allegations that have already been considered and found insufficient. The Court previously addressed plaintiffs' allegations concerning the lawsuits and ensuing media coverage and settlements and held that they do not allow a reasonable inference that the Board knew about ongoing wrongdoing and condoned it. (Mem. Op. & Order at 16-19 (citing cases).) Similarly, Discover's offer of full refunds and its disclosures about the FDIC's investigation and impending enforcement action do not allow a logical inference that a majority of the Board knew about ongoing violations and condoned them. Bad-faith conduct on the part of the directors simply does not logically follow from those allegations. As for the conference-call allegations, they are a far cry from "red flags." Nelms and other executives are alleged to have merely "discuss[ed]" "credit card regulation," noted that with the introduction of the CFPB, there would be "more people looking

---

[3]Plaintiffs also list as an "additional red flag" that "[i]n December 2007, Discover began engaging in an unlawful telephone marketing scheme that lasted through 2012 . . . and was of such magnitude and duration that two federal agencies brought enforcement actions . . . resulting in over $200 million in penalties and restitution and the suspension of all add-on product marketing." (Pls.' Mem. at 6.) This is not a true red flag, and, as defendants point out, it is not new; those allegations have been in the case all along, and the Joint Consent Order is what occasioned this suit.

over [the executives'] shoulders," and stated what they believed were the CFPB's general concerns. (Pls.' Mem. at 6-7.)

The Court reiterates that although it has organized its discussion of plaintiffs' allegations by category, it previously considered and is currently considering the allegations in the aggregate. But none of plaintiffs' allegations provide a basis to reasonably infer that Discover's directors intentionally permitted or consciously disregarded any ongoing illegal marketing of the add-on products, and adding all of the allegations together to view them as a whole does not lead to a different conclusion. It remains the case that plaintiffs essentially equate a bad outcome with bad faith, which is a pleading method that is insufficient to make the required threshold showing that a majority of the Discover Board members acted in bad faith. Because the proposed additional allegations do not materially add to the amended complaint, plaintiffs' motion for leave to amend is denied.

This is the end of the road for this action in this court. The Court stated in its previous opinion:

> Plaintiffs have had a number of opportunities to amend the complaint. The original complaint was filed in August 2012. Shortly thereafter, . . . the case was consolidated with 12 C 6883. In November 2012, plaintiffs filed a consolidated complaint, which substantively amended the original complaint in that it added allegations about the Joint Consent Order, which had been issued in September 2012. Defendants moved to dismiss the consolidated complaint. In lieu of responding to that motion, plaintiffs sought leave to amend yet again, which was granted. Plaintiffs then filed the current complaint, the amended consolidated complaint, in February 2013. Their brief does not explain how they propose to amend the current complaint or why they believe a second (really, a third) amended complaint would survive a motion to dismiss. As a result, the Court doubts that plaintiffs can further supplement their allegations of demand futility to satisfy the requirements of Delaware law, but will give plaintiffs the opportunity to file a memorandum in support of their request for leave to amend. The Court will therefore dismiss the complaint without prejudice at this juncture. If plaintiffs do not file a timely memorandum or it appears from the memorandum that amendment would be futile, the Court will dismiss this suit with prejudice.

7

(Mem. Op. & Order at 24-25.) As discussed above, it appears from plaintiffs' memorandum that amendment would be futile. The Court of Appeals "ha[s] recognized, on many occasions, that a district court does not abuse its discretion by denying a motion for leave to amend when the plaintiff fails to establish that the proposed amendment would cure the deficiencies identified in the earlier complaint." *Gonzalez-Koeneke*, 791 F.3d at 807; *see also McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014) ("District courts may refuse to entertain a proposed amendment on futility grounds when the new pleading would not survive a motion to dismiss."). Accordingly, this action is dismissed with prejudice.

## CONCLUSION

Plaintiffs' motion for reconsideration [109] is denied. Plaintiffs' motion for leave to amend [112] is denied. Because the amendments proposed by plaintiffs would be futile, the Court dismisses this action with prejudice. The case is terminated.

**SO ORDERED.**                            **ENTERED:**    March 17, 2016

_____
**JORGE L. ALONSO**
**United States District Judge**